Case number 181678 United States v. Dewan Rabb Good morning. May it please the Court. My name is Siri Preet. I represent the appellant Dewan Rabb in this case. With the Court's permission, I would like to reserve one minute of my time for rebuttal. Thank you very much. We are here because Mr. Rabb was sentenced as a career offender in the District of Maine following his guilty plea on various drug charges. He was determined by the District Court to have been a career offender based on a conviction out of New York State in the year 2000, I believe it was, for second degree robbery. Below the question that was up for decision by the District Court judge about whether this was qualified as a career offender predicate was whether New York robbery specifically fit the generic definition of robbery under the Enumerated Offenses Clause of the 2016 version of the Career Offender Guideline. We submit that the Court erred in determining that New York robbery fit within the generic definition of robbery and that there are three specific areas in which New York robbery encompasses conduct that does not fall within the definition of generic robbery. So to address first, what we submit are the divergences, as it were. The core of robbery under New York Penal Code Section 160.00, there's a core definition of forcible stealing, which then forms the basis for the different aggravated forms of robbery. And forcible stealing is defined in two different ways by that statute. The first form of forcible stealing is preventing or overcoming resistance to the taking of the property or the retention thereof immediately after the taking or, and this is important too, these are in the disjunctive, compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny. In this case, such Shepard documents as exist are really only the indictment, the underlying indictment which is in the sealed appendix. The indictment says nothing, reveals nothing about what theory of forcible stealing underlay the indictment in this case. In other words, the Shepard documents do not tell you whether he was indicted for prong two, compelling the owner of the property or another person to deliver up the property. A recent Second Circuit panel determined that New York robbery under Section 160.00 and all of its different forms afterwards, its different aggravated forms, could not be generic robbery because particularly I would submit the second part of that definition does not require that a taking of property have been from the person of the victim. The great, great weight of authority across the entire country on the state level, on the federal level requires a robbery to be a larceny from the person of the victim. It cannot be a robbery of property that, for example, the person has in their home and you compel somebody to bring up the $200,000 in your safe to someplace across town and that's a robbery. It requires that the property have been either on the person of the victim or within the person's immediate custody and control. So for example, an example of that would be if your briefcase is next to you and you set it down on the floor next to you and somebody comes up and gets it and then you get into a tussle. That's still property being taken from your person or immediate control. But the statute as written and as applied in New York has made it very clear that robbery can be committed by the theft of property that's not on the person of the victim. Another problem with the New York robbery statute and what takes it outside of generic robbery is that again, the great weight of the cases require essentially that the force be used to separate the victim of the robbery from his control of the property being stolen. In other words, either force or the threat of force has to be used in order to accomplish the theft, to accomplish the taking of the property. Many, many New York cases, some of which are in my brief and I know Judge Barron that you have canvassed the law from your decision in the Steve case where you go through a great number of the New York State cases on robbery. But it's clear that New York State countenances a quote-unquote robbery conviction where the use of force postdates, as it were, at least in time, the actual taking of the property. I cite in my brief, which I think is sort of a classic case which illustrates the problem with the New York robbery, which is the People vs. Car L case. Before you go too far down this, all of this is relevant if generic robbery includes purse snatching. But if generic robbery does not include purse snatching, then we don't need to get into any of this and you still win, right? Because I thought Steve held that a 2000 robbery in New York could be from mere purse snatching in which the So what is the, in your brief, you kind of assert that generic robbery does not include that de minimis use of force. But you don't cite a whole lot of authority to back up that proposition. Is the idea just implicit in the notion of fear and intimidation? That's exactly right. That's exactly what I was going to say. That implicit in fear and intimidation is the application of a degree of force. That's exactly what I was going to say. The application of a degree of force that would make somebody feel bodily injury, for example, or fear harm, which can't be. See, because if I understand it, because we apply the historical approach in Faust, we apply that in Steve. And that made us look at the state of New York law in 2000. Now, New York law changed post-2000 so that it's not clear that a mere purse snatching with no force given juggins would any longer be a robbery. But at the time of this conviction, it's the same as the time of Steve. Exactly right. It's a 2000 conviction. So it's not clear to me that the Second Circuit was really dealing with the same type of whether just a purse snatching counted under New York law. They seem to think juggins is a relevant precedent. So they then focus on the issue of presence. But I'm not sure we need to focus on that in order for you to win. Well, that may be so. But I think what I'm trying to do is make the overall point that a number of ways you slice it, New York robbery isn't generic. And since this was a case where the point about whether it came under the enumerated offenses clause, that was really the analysis that... I have to say I'm a little less certain of the other two grounds that you're... I'm not sure I'm certain of the first one. But on the other two grounds, the other states that even have a presence requirement also seem to construe presence rather loosely. Well, I have not found... You don't have to be in the same room. The property can be in a different room when they take it. They set cases that say you're not near it. You're only near it in a sense. I think that... They have shoplifting cases where it's taken from the store and then the force is used by the security guard afterwards. Well, let me just answer that by saying states, state legislatures are free to criminalize a broad conduct and to put whatever labels on it, on that conduct that they think fit. But that doesn't mean that those labels... Yeah, but if most states give that label to an offense, it's a little hard to say it's not generic. Well, I don't know that the cases cited in either of the briefs, one would say that a robbery, that taking somebody's purse, even if you're in the next room, isn't a robbery if, for example, you held a person up at gunpoint in order to get them away from their purse so that you could take it, which I think is one of the cases, for example, that the government cited in this brief. These are cases where I argue in my reply brief show that force is used to keep the person from asserting control of their property, to keep them away from the custody of their own property. Those are like the locking the people in the refrigerator cases, that sort of thing. But it's pretty clear that New York countenances, and in fact the Car-El case is very clear about this. It says in Car-El, this case would have been a larceny. This theft of the man's beeper on the subway car, this is the guy sleeping on the subway car and then there's the freight car ten minutes later on the subway platform. This would have been a larceny if there had not been the freight car, the fisticuffs ten minutes later on the subway platform when these people were trying to get away. One thing I would say to that is that a larceny is neither a robbery or not when it happens. It does not become a robbery later. It doesn't start out as something and then become a robbery because of later events. And I'm a little over my time. Thank you. May it please the court, Julia Lopez for the United States. Your Honor, the appellant asked the court to adopt a definition of generic robbery that would exclude the robbery statute of approximately 20 states. This court should decline to define generic robbery that would make portions of the career offender guideline inapplicable in that many states. When you say the definition of robbery in 20 states, should we be looking at the definition of robbery in those states at the time the guideline was promulgated? Isn't that what we're really trying to do is to capture the intent of the drafters rather than where the law may have moved subsequently? Yes, Your Honor, but the guideline that we're looking at now was amended in 2016. So if we look at, it was in 2016 that robbery was moved out of the application notes explicitly into the text of the enumerated clause of the career offender guideline. But then you have to do a matching between the conviction at the time it occurred. Correct. So the fact that a state has moved over that time, that doesn't help us. Correct. But the New York definition of robbery in regards to the person or presence issue has been the same for the entire time. What about the force issue? Yes, Your Honor, I think the court is correct that the force issue is really the crux of the issue here and the most difficult issue conceitedly for the government. But I would argue that all that's required by generic robbery is a de minimis force. What's the authority for that? Your Honor, it comes from a lot of different sources. Certainly courts and treatises draw a distinction between stealthy taking and robbery. And then there's the question of a sudden snatching and exactly what does that mean. And I think there are different types of sudden snatching. What this court referred to instead was a snatching that produces awareness. So it's not a snatching with no force at all because then that would not be robbery per the terms of the New York statute. But it's not force that would generate fear. That's why it emphasizes awareness. That was key in Steve. And all of your definitions that support generic robbery seem to talk about, and understandably, New York itself clarified that mere awareness is not enough to generate a robbery. So I'm just not seeing what you've cited that suggests that the use of force that merely creates awareness but not fear is enough to constitute generic robbery. Your Honor, I think the difficulty is if we elevate the standard to the standard that was used in Steve or the standard that the Supreme Court has now adopted in Stokely for the force clause, force sufficient to produce awareness, what we've done is essentially merge the force clause analysis of the career offender guideline into the enumerated clause analysis. If we say that generic robbery only counts if it's force sufficient to overcome resistance, then the enumeration of robbery in the career offender guideline is essentially superfluous. The sentencing commission could have just used the force clause. And so I would suggest that the court shouldn't interpret generic robbery in such a way as to render its listing in the enumerated clause superfluous. Is it just mere awareness? Well, again, Your Honor, it comes back to, I guess, the court's definitions of force. And I would argue that mere awareness still is force sufficient to provoke a reaction. How many states as of 2000 defined robbery to include the type of force that New York was found to have included in Steve as of that time? Do you know? I don't know, Your Honor. But would you agree that if it was less than five, you'd have a problem? In terms of the generic definition, I would say yes. Notwithstanding the point you make about the elements clause of force and robbery being in the enumerated clause. Correct. Correct. Again, I understand where the court is coming from. I think Steve puts us in a bit of a trick box here with this case. I would argue that if the court adopts the standard, then there's really no point in even having an enumerated offense of robbery. Generic robbery is the same as the force. I'm trying to put that together with what you just said to me, though, that if you would agree that if almost no states actually define robbery that minimally, it would not be generic robbery. Those two propositions can't go together. Closer together in light of Stoeckling. I think what the Supreme Court did in Stoeckling is sort of made clear that even the force for force clause is not a great deal. It's just force sufficient to overcome resistance. But I would argue, again, that force even sufficient to create awareness does create a potential fear or intimidation and create a risk of injury or danger to the person. I guess I would say that otherwise we're defining robbery based on the reaction of the victim. If the victim resists, then it becomes a robbery. But if the person uses the same amount of force with someone else and that person doesn't resist, it's not a robbery. And I would suggest that that's not a particularly sensible way of defining robbery. Instead, we should look into the actions of the victim. And again, Steve didn't say no force. He just said that it was a minimum amount of force. But force sufficient to produce awareness, not a stealthy taking. So we would argue on that basis that this court should interpret generic robbery to require only a de minimis level of force. But I'm still just trying to penetrate this question. That would be true even if almost no states adopted that understanding of robbery. I guess, Your Honor, I don't know the number of states. I understand that. I'm asking theoretically. If New York was a complete outlier, then yes, I think that would not be generic robbery. I'm just not aware of any cases holding that it's got to be something, an enhanced level of force. Well, Annie, New York at post-2000 is such a case. You mean the Jurgens case? Yeah, the Jurgens case. You cannot convict someone of robbery for the kind of force that merely creates awareness. And if almost all states are like that, and we're like that, we're all like that now, and we're like that in 2016, it just seems odd to say that the guideline picks up a definition of generic robbery that almost no state adopts. Well, Your Honor, I may have a little bit of confusion about Steve, but I didn't read that decision as indicating that New York had definitively changed its law. If that's the case, then perhaps we'll be back here another time with a more recent robbery statute, and I can see that we are stuck per faust and seed with the law as it existed as of 2000. But my argument still, I guess, the argument I have for your court is that I think there's no authority that more than de minimis force is required, and certainly appellant hasn't cited any. Turning briefly to the other two reasons why the appellant argues that the New York statute is broader than its generic counterpart, again, going back to this person or presence requirement, approximately 20 states have eliminated that from their robbery statutes. And so we would submit to the court that following, for example, the Second Circuit in Pereira-Gomez to conclude that nonetheless generic robbery requires a taking to be from the person or presence of another would be excluding so many states as to not really be settling on a generic definition. And I think that argument is consistent with the Supreme Court's cautions over the years that courts should not be interpreting statutes in such a way to exclude a number of states. And so when you've got Pereira-Gomez at 27 go one way, we have 20 the other way on this person or presence issue, when you just go with the 27, you're really excluding a large number of states, and we would suggest to the court to not adopt a generic definition that has that person or presence requirement. Similarly, with this idea that the force can occur after the robbery, even looking at those 20 that we identified in our brief that do not have a person's or presence requirement, just reviewing them myself, it appears to me that they all also allow for robbery when the force occurs after the taking, for example, during flight or to retain the property. So again, interpreting generic robbery to exclude such statutes would have an anomalous result. For these reasons, we would argue that the district court did not err, and unless there are any additional questions. Is Stokely decided after the Second Circuit's decision? In Pereira-Gomez? Yeah. Yes, Your Honor, I believe that. So they wouldn't have known that the less than 25 still could be a generic robbery at the time they decided Pereira-Gomez, right? Well, Stokely was a force clause case. Oh, I see, I see. That's what you're saying. But I understand what you're saying, but that language about not adopting instructions that would exclude even seemingly less than 25 states. Well, but Your Honor, I think that derives from Taylor, which is obviously well before Pereira-Gomez, where the Supreme Court said that the generic definition is the common contemporary definition or the way in which the crime is defined in the statutes of most states. So I don't think that's a new principle. Well, I guess that's what most to me sounds like more than 25. Stokely seems to refer to less than 25. Does the government have a view as for purposes of generic what I'm supposed to follow, whether I need to determine that it's more than 25 states or whether I just have to determine that it's a lot of states that would be excluded? Your Honor, in light of Stokely, I would suggest what the court meant there is that the court should not define an offense that would exclude a large number of states. So if you had five that were an outlier and I can't put an exact number on it, then five versus 45 maybe would be okay. To exclude 20, I think, would be a large number under Stokely. Even though that's not most? I guess it depends how most is defined, Your Honor. But I think what the court was trying to say is that these statutes are intended to be inclusive rather than exclusive. Thank you. Can I have just one moment? Yeah. And what I really want to do is to talk about what I think the government is trying to do, which is to say that the court shouldn't look at Taylor anymore and what Taylor tells the court it has to do in these sort of armed career criminal, career offender type situations, which is you can't rely upon the label that a state legislature decides to put on the name of some criminal conduct that it has made illegal. You have to. You can look at the label and then you have to decide, well, what does the common law or now the generic contemporary definition say about what this crime is? And the reason the career offender guideline is written this way and the reason it's been interpreted to require generic definitions is because the legislature, the Congress realized that states can call things anything they want, regardless of whether they actually fit within the common law definition, just like here in Massachusetts we call breaking and entering into a car, it could be a burglary, but it's not generic burglary for purposes of Taylor. Thank you. Thank you.